

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

HERIBERTO GARCIA-RODRIGUEZ,

      Defendant.

Case No. 2:03-CR-0061-SWS

---

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

This matter comes before the Court on Defendant's *pro se Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 135). The Court, having considered the briefs and materials submitted in support of the motion and the United States' response in opposition thereto (ECF No. 143), and being otherwise fully advised, FINDS the motion should be denied.

### BACKGROUND

On February 16, 2003, Defendant was arrested after he had been stopped on I-80 in Laramie County, Wyoming while in possession of about 16 pounds of methamphetamine. (Presentence Investigation Report ("PSR") at 6.) He was subsequently indicted for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). (ECF No. 1.) Additionally, because of two prior drug felony convictions in California, the United States filed an information pursuant to 21 U.S.C. §

851 notifying Defendant of the government's intention to seek a mandatory life sentence if he was convicted of the charges.[1] (ECF No. 32.)

On January 9, 2004, a jury convicted Defendant of the sole charge in the indictment. (*See* Verdict, ECF No. 58.) As a result, a U.S. Probation Officer prepared a PSR which determined the Defendant's sentencing range under the federal Sentencing Guidelines. In that regard, the PSR found the Defendant's base offense level was 36 due to his possession of 7.5 kilograms of methamphetamine. (PSR ¶ 12.) That was also his total offense level under the drug trafficking guidelines. (*Id.* at 7-8.) However, because he was determined to be a career offender, Defendant's total offense level was enhanced to 37. (*Id.* ¶ 20.)

The PSR also considered Defendant's criminal history. In addition to his two prior drug felony convictions noted above, Defendant had two prior countable convictions from Long Beach, California for driving while under the influence. (*Id.* ¶¶ 24, 25.) These convictions yielded a criminal history score of nine, to which two additional points were added because he committed his offense in this case while still subject to a prior criminal justice sentence, *i.e.* a term of probation imposed in 2000 for his heroin trafficking offense that year. (*Id.* ¶ 28.) All of that resulted in a total of 11 criminal history points, placing him in Criminal History Category V. (*Id.*) However, because he was otherwise qualified as a career offender under U.S.S.G. § 4B1.1(a) and (b)(A), Defendant's Criminal History Category was instead VI. (*Id.*)

---

[1] The Defendant's two qualifying drug felony convictions were a 1992 conviction in Fresno County, California for unlawfully selling cocaine, and a 2000 conviction in Long Beach, California for possessing heroin for sale. (*See* PSR ¶¶ 23, 27.)

Based on these determinations, the Defendant's guideline range was 360 months to life imprisonment; however, Defendant was subject by statute to mandatory life sentence. (PSR ¶¶ 42, 43.)

Because Defendant declined to be interviewed in connection with the PSR, the probation officer provided information about Defendant's personal circumstances obtained from a previous presentence report prepared in 1992 by state probation authorities in Fresno, California. (PSR ¶ 32.) Defendant was born on June 25, 1966 in Michoacan, Mexico. (*Id.* ¶ 33.) He was the seventh of nine children, with five brothers and three sisters. (*Id.*) At the time of the 1992 state court PSR, all but one of his siblings resided in Mexico, as did his mother. (*Id.*) Defendant's presence in the United States was not lawful. (*Id.* ¶ 34.) He had been married as of 1992 and had one child, who was reportedly living with his mother. (*Id.* ¶ 35.) Also, at least as of 1992, Defendant did not appear to have any substance abuse issues. (*Id.* ¶ 38.)

Defendant appeared for sentencing on April 16, 2004. (ECF No. 71.) As required by 21 U.S.C. §§ 841(b)(1)(A) and 851 at that time, Defendant was sentenced to a mandatory term of life imprisonment. (ECF No. 75.)

He appealed his conviction and sentence, but both were affirmed by the court of appeals in 2005. *United States v. Garcia-Rodriguez*, 127 F. App'x 440 (10th Cir. 2005). Between August of 2007 and September of 2014, Defendant filed three motions attacking his conviction and sentence under 28 U.S.C. § 2255. (*See* ECF Nos. 103, 120, 123.) The court of appeals affirmed the Court's denial or dismissal of each of his § 2255 motions. (*See* ECF Nos. 104, 118, 121, 124; *United States v. Garcia-Rodriguez*, 516 F. App'x 704

(Mem.) (10th Cir. June 19, 2013) (unpublished); *United States v. Garcia-Rodriguez*, 605 F. App'x 765 (Mem.) (10th Cir. May 22, 2015) (unpublished).)  Next, on October 5, 2015, Defendant filed a motion for relief alleging "Fraud on the Court" related to his traffic stop and the eventual discovery of the methamphetamine he was carrying.  (ECF No. 128.) Again, the court dismissed his motion as an unauthorized second or successive § 2255 motion over which it could not exercise jurisdiction.  (ECF No. 132.)

Finally, on April 28, 2016, Defendant filed a motion with the court of appeals under 28 U.S.C. §§ 2244 and 2255(h) seeking permission to challenge his life sentenced based on the Supreme Court's then-recent decision in *Johnson v. United States*, 576 U.S. 591 (2015).  (ECF No. 133.)  The court of appeals denied authorization, finding the holding in *Johnson* is irrelevant to Defendant's life sentence.  (*See* ECF No. 134.)

On August 10, 2020, Defendant submitted a compassionate release request to his warden.  (ECF No. 140-2.)  The warden denied Defendant's request on August 25, 2020. (ECF No. 140-3.)  Defendant filed his compassionate release motion in this Court on October 19, 2021.  Defendant asserts the following extraordinary and compelling circumstances support his request:  (1) his life sentence is disproportionately longer than it would be today by virtue of the First Step Act; (2) he has a "remarkable record of rehabilitation" during the 18½ years he has served in prison; (3) he is needed to serve as an additional caregiver to his "ailing" mother who purportedly has a number of medical issues; and (4) his exposure to COVID-19.  (Mot. at 3-4.)

Defendant is presently 55 years old, suffers from high blood pressure (hypertension) and high cholesterol (hyperlipidemia), and falls in the "obese" category.  (ECF No. 135 at

10, 14.)  While obesity increases one's risk of severe illness from COVID-19,[2] BOP's records indicate Defendant has been fully vaccinated against COVID-19, having received the two-dose Pfizer regimen on March 22, 2021 and April 13, 2021.  (ECF No. 139-2.) Defendant's BOP disciplinary record shows his last reported infraction occurred in June of 2011 and involved only an abuse of telephone privileges.  (ECF No. 140-1.)

Regarding his mother, Defendant reports his mother is elderly and suffers from a host of medical issues, including diabetes, high blood pressure, a prothesis, and a pacemaker.  (Mot. at 4.)  Although his mother lives with his two sisters, Defendant claims he is the "only available child who can aide his mother" because both his sisters work full time.  (*Id.*)  As for his proposed "release plan," Defendant indicates he would live with his wife and children in Uruapan, and he will be employed in his sibling's mango and avocado orchards.[3]  (*Id.* at 6-7.)

## LEGAL STANDARD

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."  *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997).  *See also Dillon v. U.S.*, 560 U.S. 817, 819 (2010); *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) ("[a] district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so") (internal quotation marks and citation omitted).  Congress provided such authorization in 18 U.S.C. § 3582(c), which permits a

---

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[3] As the government points out, Defendant does not explain how he would work in the orchards while at the same time providing care to his mother during the day when his sisters are at work.

district court to reduce a defendant's term of imprisonment in specified circumstances, including so-called "compassionate release" under § 3582(c)(1)(A).

An inmate seeking compassionate release under § 3582(c)(1)(A) has the burden to show the statute authorizes a reduction of his or her sentence. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (defendant bears burden of demonstrating entitlement to relief under § 3582(c)(2)); *United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020) (movant required to show § 3582(c) authorizes relief); *United States v. Pullen*, No. 98-40080-01-JAR, 2020 WL 4049899, at *2 (D. Kan. July 20, 2020) ("defendant requesting compassionate release bears the burden of establishing that compassionate release is warranted under the statute"). Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment upon motion of a defendant who has exhausted his administrative rights[4] where three requirements are met: "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

In *McGee*, the Tenth Circuit adopted a three-step test used by the Sixth Circuit to determine whether a motion for a reduction in sentence under § 3582(c)(1)(A)(i) can be

---

[4] A court may consider a request for compassionate release only upon motion of the BOP, "or upon motion of the defendant *after* the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added).

granted: (1) determine whether "extraordinary and compelling circumstances" warrant a sentence reduction, (2) find whether such reduction is consistent with *applicable* policy statements, and (3) consider any applicable § 3553(a) factors and "determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *See id.* at 1042-43 (citing *United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020)). The *McGee* court definitively found the district courts are not bound by U.S.S.G. § 1B1.13 and its related comments, as these policy statements are not applicable to a defendant's motion for relief under § 3582(c)(1)(A). *See id.* at 1050. Ultimately, "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 236 (2d. Cir. 2020)).

Under this interpretation, district courts have more discretion to consider reasons which might reach the "extraordinary and compelling" threshold to justify early release. Of note, while the Tenth Circuit has determined U.S.S.G. § 1B1.13 is no longer applicable to defendant-filed motions under § 3582(c)(1)(A), it has not indicated which, if any, policy statements are applicable.[5] The Tenth Circuit also adopted the Sixth Circuit's position that district courts may deny a compassionate release motion under § 3582(c)(1)(A) if any of the three requirements are not met, leaving no need to address the remaining requirements.

---

[5] Judge Tymkovich in *United States v. Maumau* highlights this point in his concurring opinion, explaining, "[u]ntil the Sentencing Commission updates its guidance, there is *no* 'applicable policy statement' . . . that constrains the district court's discretion to consider whether a defendant-filed motion satisfies the 'extraordinary and compelling' standard." 993 F.3d 821, 838 (10th Cir. 2021) (emphasis added).

*Id.* at 1043 (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).  *See also United States v. Hald*, 8 F.4th 932, 941-47 (10th Cir. 2021).

DISCUSSION

In support of his motion, Defendant points to four circumstances which he asserts constitute extraordinary and compelling reasons for a sentence reduction.  First, he asserts his life sentence was "unusually long" compared to what a person convicted of the same crime would receive today.  (Mot. at 3-4.)  Under *McGee* and *Maumau*, the Court can properly consider this circumstance when evaluating a motion under § 3582(c)(1)(A)(i); however, such a circumstance does not automatically qualify as an "extraordinary and compelling reason" for compassionate release.  *McGee* set forth an important limitation on a district court's exercise of discretion in this area:

> [T]he fact a defendant is serving a pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i). Instead, . . . it can only be the combination of such a sentence and a defendant's unique circumstances that constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).

992 F.3d at 1048.  Thus, a prisoner must do more than simply point to the length of his sentence; he must additionally point to some individualized circumstances that would warrant a sentence reduction.  In *Maumau*, for example, the defendant was released early not merely because of his extraordinarily long sentence under 18 U.S.C. § 924(c); rather, "the district court's decision indicates that its finding of 'extraordinary and compelling reasons' was based on its individualized review of all the circumstances of Maumau's case

and its conclusion 'that a combination of factors' warranted relief[.]'" 993 F.3d at 837.  In

his concurring opinion in *Maumau*, Judge Tymkovich emphasized:

> [T]he imposition of a sentence that was not only permissible but statutorily
> required at the time is neither an extraordinary nor a compelling reason to
> now reduce that same sentence. Instead, a district court may consider the
> legislative change to [18 U.S.C. § 924(c)'s] stacking provision only in the
> context of an individualized review of a movant's circumstances.
>
> Cases in which those circumstances warrant a finding of "extraordinary and
> compelling reasons" should be relatively rare.

993 F.3d at 838 (Tymkovich, C.J., concurring) (citation omitted).

The United States concedes, were Defendant sentenced today for the same crime

and with the same criminal history, he would not be subject to a *mandatory* life sentence.

(Gov't Resp. Br. at 10.)  The United States represents that, as a result of the First Step Act,

and assuming his two prior drug felony convictions also counted as "serious drug offenses"

(and the government admits it is debatable whether his 2000 heroin conviction would

count), his statutory minimum would have been only 25 years, not life.  (*Id.*)  And if only

his first 1992 conviction counted, Defendant's minimum would have been only 15 years

imprisonment.

But there is more to the story.  Mandatory minimums aside, Defendant was also a

career offender under the Sentencing Guidelines, with a recommended sentencing range of

360 months to life imprisonment.  (*See* PSR ¶¶ 28, 43.)  The First Step Act would not have

changed that determination.[6]  Defendant has not suggested the existence of any factors

---

[6] Under U.S.S.G. § 4B1.1(b), the statutory *maximum* of the Defendant's crime remained life imprisonment under 21
U.S.C. § 841(b)(1)(A), and nothing in the intervening last 18 years has altered the criteria for career offenders under
§ 4B1.1(a).

which might have induced the Court to grant him a sentence below the bottom of the advisory guideline range. Thus, while today he would not have been subject to a mandatory life sentence, Defendant's advisory guideline range would have included a life sentence and, in any event, likely would have been subject to a 30-year guideline sentence. Given he has served a total of 18 years, releasing him now would constitute a 10+ year variance under the advisory guideline range.

Defendant's individualized circumstances are not sufficient to bring his motion within the umbrella of *Maumau*. Unlike in *Maumau*, Defendant was not a young man with a relatively clean record when he was sentenced; rather, Defendant was a 37-year-old man who had compiled a significant criminal record as a committed drug trafficker. (*See* PSR at 8-10.) And unlike the defendant in *Maumau*, he wasn't given a sentence plainly out of balance with any co-defendants/co-conspirators. *See Maumau*, 993 F.3d at 829 (noting Maumau's sentence – even if released immediately – would be substantially more severe than co-defendants who received favorable plea deals). Defendant had no co-defendants. Nor, unlike Maumau, was the Defendant's actual sentence necessarily far out of line with what he might have received had he accepted the government's plea offer. In *Maumau*, the defendant was offered a plea deal which contemplated he would receive a 10-year sentence, which was significantly less than the 55-year sentence he ultimately received. *Id*. at 826, 829. By the time Maumau had filed his § 3582(c) motion, he had already served the equivalent of a 12-year sentence, counting good time – an amount that plainly exceeded what the government had offered. *Id*. at 829.

The Court agrees with the United States that Defendant's case is not analogous to *Maumau*. Though he has been in prison over 18 years, the government's plea offer, which Defendant initially accepted but then rejected, differed from his ultimate sentencing only in that the government agreed to recommend a reduction of up to three offense levels to reflect Defendant's acceptance of responsibility. (PSR at 5; ECF Nos. 21, 24.)  But even so, Defendant still would have been sentenced under the career offender guidelines, and so his guideline sentencing range would have been based on a total offense level of 34 (37-3; *see* U.S.S.G. § 4B1.1(b)) and Criminal History Category VI.  The range provided for by that calculation was 262-327 months imprisonment (U.S.S.G. Sent. Table).  Thus, unlike in *Maumau*, the Defendant's best case, plea agreement sentencing range of about 22 to 27 years still exceeds the time he has served to date.

Defendant's proffered individual circumstances, even when combined with the disparity between the sentence he received and what he would receive if sentenced today, do not constitute extraordinary and compelling reasons for early release. Defendant claims to have achieved a "remarkable record of rehabilitation" during his time in prison; the Court, however, finds his lack of recent disciplinary infractions and completion of "Spanish as a Second Language" and a couple of "leatherwork" classes commendable, but not extraordinary or compelling.  Moreover, absent truly unique or exceptional circumstances, rehabilitation is not a factor favored under the governing laws with respect to compassionate release motions.  *See* 28 U.S.C. § 994(t); *United States v. Mora*, No. 98-CR-108-SWS, 2021 WL 2407913, at *6 (D. Wyo. May 27, 2021).

Defendant also point to the needs of his elderly mother, for whom he would serve as an additional caregiver should he be released early.  But, Defendant doesn't show why other family members living in the same place as his mother, such as his other siblings, and apparently his wife and children, couldn't assist in his mother's care while his sisters – reportedly his mother's primary caregivers – are at work.  According to his PSR, Defendant had seven siblings living in Mexico. (PSR ¶ 33.) Defendant doesn't explain or substantiate why, given the information about his family in the record, his assistance as a caregiver is critical for the well-being of his mother.  And that is especially so given that, in his papers, he says he will, upon release, be employed in mango and avocado orchards owned by a sibling.  How he can be employed full time and also provide caregiving to his mother while his sisters are at work is neither explained nor substantiated.

Finally, nothing about Defendant's current health situation supplies a reason for granting him early release. Before the availability of vaccines to federal inmates, the Government would concede the existence of "extraordinary and compelling reasons" for early release if an inmate had a chronic health condition that increased his risk of severe illness from COVID-19, and if the inmate had neither received nor refused a COVID-19 vaccine.  However, following the BOP's vaccination efforts, the Government no longer makes such a concession.  "A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to [§ 3582(c)(1)(A)], but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."  *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). *See also United States v. Lemons*, 15 F.4th

747, 751 (6th Cir. 2021) (inmate's access to COVID-19 vaccine "substantially undermines" request for sentence reduction). To be sure, the vaccines are not 100% effective. But according to the CDC, "[t]he COVID-19 vaccines approved or authorized in the United States are highly effective at preventing severe disease and death, including against the Delta variant." *See* Ctrs. for Disease Control & Prevention, *Infections and Spread*, https://www.cdc.gov/coronavirus/2019-nCoV//variants/delta-variant.html (updated Aug. 26, 2021).

In this case, Defendant has not shown the virus represents an "extraordinary and compelling reason" for compassionate release, even combined with his sentence disparity. While he does present with some medical issues that could be problematic should he actually contract COVID-19 (*i.e.*, obesity, hypertension), Defendant is now fully vaccinated. Moreover, as some courts have noted, certain risk factors identified by the CDC, such as obesity, hypertension, or high cholesterol, are too "commonplace" to constitute extraordinary and compelling reasons for a sentence reduction. *See United States v. Avalos*, 856 F. App'x 199, 205 n.4 (10th Cir. 2021) (citations omitted).

Because Defendant has not established the existence of any extraordinary and compelling circumstances justifying a sentence reduction, the Court need not address how a consideration of the § 3553(a) factors might affect the balance in his case. *McGee*, 992 F.3d at 1043. Nevertheless, a review of those factors further supports denial of Defendant's motion even had he otherwise established extraordinary and compelling reasons.

Under § 3553(a)(1), a court must "consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant." Under § 3553(a)(2)(A), a

court must also "consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." And under § 3553(a)(2)(B), (C) and (D), a court must "consider . . . the need . . . to afford adequate deterrence to criminal conduct[,] . . . protect the public from further crimes of the defendant[,] and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Moreover, under § 3553(a)(4), a court must consider applicable provisions under the advisory Guidelines, and under § 3553(a)(6), a court must "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"

First, unlike, for example, the defendant in *Maumau*, the Defendant here was not a relative youth with an unblemished prior criminal record. He was 37 years old when he committed his offense in this case, and he had already committed two prior drug felonies. The total quantity of methamphetamine he was transporting (16½ pounds) – at least by 2003 standards – was quite significant and well over the 500 grams threshold needed to trigger § 841(b)(1)(A)'s mandatory minimum. (PSR at 4-6.) Even were the Defendant convicted of this offense today, his guideline range would be 360 months to life imprisonment. Thus, the bottom of that range is still a dozen years more than the Defendant has served thus far. And there is nothing about the Defendant personally, or about the circumstances of his case, that could justify such a variance. The other § 3553(a) factors weigh neither in favor nor against Defendant's motion. So, to the extent the factors weigh one way or the other, they clearly weight against a sentence reduction.

CONCLUSION

Defendant has not shown any individualized circumstances sufficient to elevate his case into the category of extraordinary and compelling.  Because of that, and also because consideration of the § 3553(a) factors likewise does not favor his motion, his motion must be denied.  THEREFORE, it is hereby

ORDERED that Defendant's *Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)* (ECF No. 135) is DENIED.

Dated this ____8____ day of April, 2022.

Scott W. Skavdahl
United States District Judge