Heriberto Garcia-Rodriguez
Reg. No. 07859-091
United States Penitentiary
USP LEE
P.O. Box 305
Jonesville, VA 24263



FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 MAY 13 AM 10: 12

MARGARET BOTKINS, CLERK
CASPER

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| HERIBERTO GARCIA-RODRIGUEZ, | Case Number: 03-CR-61-S |
| Petitioner-Defendant(s), | **MOTION FOR RECONSIDERATION:** |
| vs. | **DENIAL OF PETITIONER GARCIA'S** |
| | **MOTION FOR COMPASSIONATE** |
| UNITED STATES OF AMERICA | **RELEASE AND REQUEST FOR** |
| | **APPOINTMENT OF COUNSEL** |
| Plaintiff(s). | |

COMES NOW, the Petitioner, and respectfully submits this Motion for Reconsideration of this honorable Court's April 8, 2022, Order denying Defendant's Motion for Compassionate Release and Request for Appointment of Counsel.

In his motion, Petitioner Garcia sought to request release or reduction in sentence based on several issues, in example, length of time already served, Dependent Family Member, Rehabilitation, had he been sentenced today he would not be sentenced to life sentence; COVID-19 risk. Moreover, Petitioner Garcia also requested to be released based on "a dependent family member" and that he intended to supplement his motion. No supplement was submitted primarily based on the mail hindrances, delay or no mail at all at the institution or facility, and Petitioner Garcia's belief that the Honorable Court, like in many cases, would appoint counsel from the Public Defender's Office to assist pro se Petitioner in gathering and obtaining documents, information, and properly briefing his arguments for a Supplement. By the time Petitioner Garcia attempted to respond it was too late.

I. **Defendant Garcia's extraordinary and compelling reason because if sentenced today for the same crime and with the same criminal history, he would not be subject to a mandatory life sentence**

Petitioner Garcia submits that in United States v. Price, 496 F. Supp. 3d 83 (D.D.C. 2020), the Court held that, where Congress has not made a reduction in mandatory-sentencing minimums retroactive, courts may determine that this constitutes an "extraordinary and compelling reason" to grant compassionate release to affected defendants, even in the absence of serious health issues. Id

Also, Petitioner Garcia submits that in *United States v. Price*, Congress has now recognized that the sentencing scheme in place in 2008 was, in this Court's words, "draconian," such that today a defendant similarly-situated to Mr. Price would face only a 15-year mandatory minimum. (*See* Supp. Mot. at 1-2 (explaining why due to amendments to the drug sentencing laws, the 1988 conviction would no longer count and the mandatory minimum sentence for one prior drug conviction is now 15 years).) But those changes to the law have not been made retroactive. Nonetheless, this situation, as a number of courts have recognized, can present an extraordinary and compelling reason to reduce a defendant's sentence, even in the absence of serious health issues. See, e.g. , United States v. Arey , 461 F.Supp.3d 343, 350 (W.D. Va. 2020) **("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a dramatically lower sentence than the one he is currently serving constituted an 'extraordinary and compelling' reason justifying potential sentence reduction under** § 3582 (c)(1)(A)."); United States v. Day , No. 1:05-cr-460, 474 F.Supp.3d 790, 806–07, (E.D. Va. July 23, 2020) (finding extraordinary and compelling reasons where "were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different. Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence."); *see also United States v. Quinn* , 467 F.Supp.3d at 829 ("enormous sentencing disparity created by subsequent changes to federal sentencing law ... constitutes an 'extraordinary and compelling reason' for ... compassionate release"); Bellamy v. United States , No. 2:03-cr-197, 474 F.Supp.3d 777, 785– 86, (E.D. Va. July 22, 2020) (considering "the disparity between individuals sentenced before

2

and after the passage of the FIRST STEP Act "); *United States v. Urkevich*, No. 8:03-cr-37, 2019 WL 6037391, at *8 (D. Neb. Nov. 14, 2019) ("A reduction ... is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); *United States v. Maumau*, No. 2:08-cr-0758, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020) ("[T]he changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here."). Id.

Petitioner Garcia submits that risk is imminent:

**The COVID-19 BA.2 subvariant will soon be the dominant strain of COVID in America:**

> Two weeks ago, BA.2 comprised an estimated 35% of analyzed samples nationwide; it made up 22% the previous week. BA.2 made up 41% of coronavirus samples last week on the west coast, up from 28% the week before. And for the first time, BA.2 is estimated to be the dominant subvariant in the Northeast, making up more than half the analyzed coronavirus cases in New York, New Jersey and New England. BOP inmate COVID numbers bottomed out at 99 last Monday, then climbed steadily to 149 last Friday. Staff cases dropped from 243 to 137. BA.2 is believed to be 30% to 60% more contagious than the earlier omicron subvariant. BA.2, however, doesn't appear to result in more severe illness than BA.1. The BOP says 70.9% of staff and 80.7% of inmates have gotten the basic vaccine, but it does not indicate the number of boosters given. Last week, the BOP announced two more inmate COVID deaths, one at Coleman Medium and the other at FMC Butner. Both occurred in February. One of the two had previously recovered from COVID. In the last 12 months, 56% of BOP inmates dying of COVID had previously caught the virus but had milder symptoms. At least 308 federal inmates in the BOP and private prisons have died of COVID in the two years since April 2020. In the prior 19 years, an average of 42 federal inmates a year died in custody. Over the past two years, the number from COVID alone averaged 154.

*L.A. Times, Omicron subvariant BA.2 spreading rapidly in L.A. and across the nation (Mar 25).*

The appointment of Counsel would have assisted indigent Defendant Garcia in obtaining the documentation, additional facts, and evidence to explain how he would work in the orchards while at the same time providing care to his mother during the day when his sisters are at work.

3

A.      **Petitioner Garcia's Extraordinary and Compelling Reasons**

Furthermore, the combination of issues Petitioner Garcia has presented amount to extraordinary and compelling reasons for sentence reduction or immediate release. District courts holding that the COVID-19 pandemic constitutes an extraordinary and compelling reason for release are legion. E.g., United States v. Tillman, No. 12-cr-2024, 2020 WL 3578374, at *5 (N.D. Iowa June 30, 2020); United States v. Schneider, No. 14-CR-30036, 2020 WL 2556354, at *1 (C.D. Ill. May 20, 2020). It necessarily follows that COVID-19 presents a still-greater extraordinary and compelling reason for release when a defendant's prison is battling a bona fide outbreak. United States v. McLin, No. 1:17-CR-110-LG-RHW, 2020 WL 3803919, at *3 (S.D. Miss. July 7, 2020) (finding that "the threat posed by COVID 19 at FCI Forrest City Low, in conjunction with McLin's medical vulnerability, weigh[ed] in favor of his release" but ultimately concluding the § 3553(a) factors barred release); United States v. McCall, 465 F. Supp. 3d 1201, 1209 (M.D. Ala. 2020) (finding "the overwhelming number of COVID-19 cases," in combination with other factors, constituted extraordinary and compelling reasons for release). This is particularly so when an inmate has preexisting health conditions that increase the likelihood of COVID-19 complications. As outlined below, Mr. Garcia has several prescriptions for his medical conditions that increase his risk of severe illness should he contract the virus. People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (Jan. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. The risk posed to Mr. Garcia's by the COVID-19 pandemic create extraordinary and compelling reason for his release. See, Ledezma-Rodriguez, --- F.Supp.3d ---- (2020) (United States District Court, S.D. Iowa, Case No. 3:00-CR-00071, Signed 07/14/2020); United States v. Hector Luis Rios, No. 3:94-cr-112 (JBA) (D. Conn., Dec. 8, 2020); United States v. Hector Lopez, Cr. No. 97-01117 ACK-2 (D. Haw. Oct. 27, 2020); United States v. Diego Rodriguez, No. 00-cr-761-2 (JSR) (S.D.N.Y., Sept. 30, 2020); United States v. Sergio Santamaria, Case No. 4:04-cr-00199-RP-RAW (S. D. Iowa, 2-01-2021); United States v. Jesus Manzo, Case No. 2:07-cr-02042-WFN (E. D. Wa. 7-29-2021); United States v. Luis Cano, 1:95-cr-00481-CMA (S. D. Fla., 12-17-2020).

Defendant Garcia's pre-First Step Act mandatory life sentence imposed under § 841(b)(1)(A) is not the only basis for a sentence reduction under § 3582(c)(l)(A)(i). It is the

combination of such a sentence and a defendant's unique circumstances that constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(l)(A)(i).

Petitioner Garcia submits that his prior convictions do not qualify today, and cannot serve as a basis to uphold a mandatory life sentence. In fact, the government admits it is debatable whether his 2000 heroin conviction would count, his statutory minimum would have been only 25 years, not life. And if only his first 1992 conviction counted. Defendant Garcia would be looking at minimum of only 15 years imprisonment.

### B.   Petitioner Garcia submits cases with Little to No Medical Condition

However, Petitioner Garcia submits a few cases with no medical condition

United States v. Chestnut, 6:09-cr-06071-DGL-MWP, Dkt. 923, 925 (W.D.N.Y. April 29, 2020)

- waiving exhaustion requirement and granting release to inmate with no medical conditions

United States v. Sturdivant, 2020 WL 6875047, at *1 (D. Conn. Nov. 23, 2020)

- Allenwood Medium
- "No particular health condition that puts him at higher risk of serious illness"
- **Not just for sick people** – numerous courts have held that, during the COVID-19 pandemic, the impending end of an inmate's sentence helps constitute an "extraordinary and compelling" reason to grant an inmate's motion for compassionate release.
    - Collecting cases
- Sturdivant is 35 years old and generally healthy
- Release in less than 7 months

United States v. Wooten, 2020 WL 6119321, at *1 (D. Conn. Oct. 16, 2020)

- FCI McKean
- Argues based on COVID and incapacitation of sister and aging mother's inability to care for her
- In addition, some courts have held that a defendant's role as the only available caregiver for an incapacitated close family member can contribute to "extraordinary and compelling reasons" warranting that defendant's release. Many courts—relying on a narrow construction of U.S.S.G. § 1B1.13 cmt. n.1(C)(ii)²—have held that "extraordinary and compelling reasons" exist only when a defendant is the only available caregiver for an incapacitated "spouse or registered partner." See, e.g., United States v. Hunter, 2020 WL 127711, at *3 (S.D. Ohio Jan. 10, 2020). However, some courts have held not held so narrowly and have found that "extraordinary and compelling reasons" may exist when a defendant is the only available caregiver of incapacitated close family members *other than* spouses and registered partners—particularly, parents.
    - Sister has cerebral palsy and is in wheelchair, mom is 69 years old
- Renewed motion
- Although Wooten does not claim that he suffers from any particular medical issue that makes him more susceptible to serious illness should he contract COVID-19, Wooten still relies in part on the general (and extraordinary) threat that COVID-19 poses in prisons
- Notes it wanted to go below mandatory minimum at sentencing

United States v. Cruz, 2020 WL 3265390, at *1 (D. Or. June 17, 2020)

- FCI Lompoc, 5 months left on sentence
- Tested positive for COVID-19 then released from isolation after 11 days without symptoms
- To date, the BOP has not set a date for Cruz's release to community corrections, despite his eligibility and my letter recommending he receive the maximum time in community corrections

5

- Apparently, the conditions at FCI Lompoc have rendered it unable to perform basic and statutorily mandated administrative functions
- Combination of medical risk, etc plus recommendation for most time in community confinement

United States v. Calabrese, 2020 WL 3316139, at *2 (D. Mass. June 18, 2020)

- 55 years old and, other than his age, has not pointed to any specific medical conditions that place him at a higher risk.
- While the situation at FMC Lexington has improved over the last month, I cannot say that based on the current number of positive cases and the deaths which have occurred that continued incarceration does not place an individual like Mr. Calabrese at risk of exposure to the virus.
- FMC Lexington

United States v. Rich, 2020 WL 2949365, at *2 (D.N.H. June 3, 2020)

- Had "history of chronic bronchitis and other respiratory illnesses puts him at substantial risk of experiencing severe illness should he contract COVID-19. He further contends that he has an increased risk of becoming infected with the virus because inmates and staff members at FMC Devens have tested positive"
- History as cigarette smoker, smoking, makes him immunocompromised
- "The court acknowledges that defendant's more recent medical records from his current incarceration do not reflect any ongoing respiratory issues"
- "The government argues that the court should not find defendant particularly vulnerable to COVID-19 because he does not have a documented diagnosis for "chronic bronchitis." Given the novelty of the coronavirus and the medical community's evolving knowledge about who is high risk, the court is not inclined to read defendant's medical records as narrowly as the government urges. Although defendant's doctor did not use the phrase "chronic bronchitis" to describe defendant's condition, the doctor described defendant as "prone to bronchitis" with "a history of reactive airway disease." That is close enough to "chronic bronchitis" for the court. Moreover, defendant not only has a history of bronchitis, he also has a history as a heavy smoker. These two issues place him in a high-risk category."

United States v. McClellan, 2020 WL 2933588 (N.D. Ohio June 3, 2020)

- Release date May 2022, 12 months of home confinement, FMC Rochester
- 58 years old, hypertension and high blood pressure
- A growing list of federal courts have concluded that the public health crisis presented by the Covid-19 pandemic in conjunction with a defendant's pre-existing health condition establishes an extraordinary and compelling reason for compassionate release.
- "Defendant does not offer evidence that he has a medical condition of the type and gravity insufficiently addressed by the BOP. However, the Court finds that the perils presented by the Covid-19 pandemic are one factor among several which warrant the sentence reduction."

United States v. Grimm, 2020 WL 2789886, at *5 (D. Nev. May 29, 2020)

- Under these circumstances, the court is inclined to release defendant. However, this conclusion is predicated on an uncertain premise: whether defendant does, in fact, have lupus. In her initial motion, defendant suggested she may have lupus only in passing.
- It was only in her reply brief that defendant expanded on this putative diagnosis. (*See* ECF No. 785). And defendant has neither been formally diagnosed with lupus nor did she present evidence of lupus beyond what is consistent with her other conditions.
- However, the court is unable to rule on the instant motion until defendant has a definitive diagnosis. Thus, the court will hold defendant's motion in abeyance and to give the BOP an opportunity to have defendant brought before a medical professional for the purpose of definitively determining whether she has lupus. If she has lupus, the BOP should determine whether it can provide defendant with chloroquine or hydroxychloroquine while incarcerated.
- Released, United States v. Grimm, 2020 WL 3643435, at *1 (D. Nev. July 6, 2020
-

United States v. Kelly, 2020 WL 2104241 (S.D. Miss., May 1, 2020)

- waiving exhaustion and granting release to Oakdale I inmate

- "Despite his youth and lack of health issues"

United States v. Mel, 2020 WL 2041674, at *2 (D. Md. Apr. 28, 2020)

- Although the presence of the historic COVID-19 pandemic in prisons arguably could alone establish extraordinary and compelling reasons, Mel has been incarcerated at FCI-Danbury, one of the hardest hit federal prisons.
- Thyroid mass, not yet malignant but unknown, "the Court cannot conclude with certainty that Mel has a high-risk health condition, particularly where she has not undergone any cancer treatment. See Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html, last visited Apr. 26, 2020 (identifying cancer treatment, not cancer itself, as a high-risk condition).
- Nevertheless, the Court finds that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19, and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life-threatening condition."
- "The fact that Mel has been incarcerated at FCI-Danbury during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated that the purposes of sentencing are fully met even with the two-week reduction."
- Scheduled release May 22, 2020, must be quarantined for 2 weeks

United States v. Le, 1:19-cr-10199, Dkt. 99 (D. Mass. May 6, 2020)

- Releasing pretrial defendant in drug trafficking case in light of COVID-19 even though he lacks "physical conditions that put him at high risk" from COVID-19 because "[t]he reduction in the prison population in and of itself" is important to combatting the virus

Matter of Extradition of Kubicki, 20-MJ-00034-STV, Dkt. 19 (D. Co. May 5, 2020)

- Granting release in pending extradition matter where relator had argued, in part, that the COVID-19 pandemic was a "special circumstance" warranting release but had not argued an individual susceptibility to COVID-19 complications

United States v. Mason, 10-cr-625, (DE 61) (D. Md. May 5, 2020)

- Releasing supervisee with "extensive and serious criminal history" from custody because COVID-19 is "so contagious" making it "imperative that D.C. Jail and CTF take all reasonable steps to prevent its spread within the jails" and recognizing the importance of reducing jail populations during the COVID-19 pandemic);

United States v. Cordova, 4:19-cr-40025-TSH, (DE 133) (D. Mass. May 1, 2020)

- Granting pretrial release to a 36 year old defendant, (see DE 120: 2), who was alleged to be a career offender facing a ten year mandatory minimum sentence

C.     **Short Time Served**

Cases where offender has not yet reported to BOP custody:

United States v. Novak, 1:19-cr-00475, Doc. 67 (N.D. Ill. Jan. 5, 2022)
United States v. Hussain, 2020 WL 5910065, at *3 (N.D. Cal. Oct. 6, 2020)
United States v. Maxwell, 2020 WL 4776012, at *4 (S.D. Ohio Oct. 13, 2021)
United States v. Hambrok, 520 F.Supp.3d 827, 830 (E.D. Va. 2021).
United States v. Cook, 2022 WL 118185, at *2 (N.D. Ohio Jan. 12, 2022)

United States v. Butler, 1:14-cr-00445-2, Doc. 188 (N.D. Ill. Apr. 6, 2020)

7

- Medical conditions worsened after sentencing
- Government took no position, defendant sent request to designated facility's warden and 30 days elapsed

United States v. Konopka, 1:17-cr-00616, ECF 117 (N.D. Ill. Sep. 10, 2020)

- Granting reduction in sentence where, after 6-month sentence was imposed, defendant received a new and serious diagnosis and in light of global pandemic

United States v. Nazario-Montijo, 3:17-cr-00278-JAG, ECF 273 (D.P.R. Sep. 17, 2020)

- Sentenced to 24 months in February under binding plea agreement, surrender date was postponed three times before court amended judgment to require no time
- Client suffers from obesity and mental health conditions that could be exacerbated by BOP infection mitigation measures);

### D. Cases where offender had only served short amount of time:

United States v. Morgan, 2020 WL 6393007, at *1 (N.D. Ill. Nov. 2, 2020)

- FCI Terre Haute
- 120 months based on 924(c) charge, reported in January 2020, served 10 months; mandatory minimum on both, selling drugs and firearm, role was as a sitter for stash house
- Type 2 diabetes, hypertension, sleep apnea, obesity
- The amount of time served to date by Morgan does not adequately account for the seriousness of his offense; the Court concluded as much when it sentenced him to a prison term totaling 120 months. On the other hand, although Morgan has a criminal history, including prior felony narcotics convictions, it is all in the distant past; his last felony conviction was in 1992, nearly thirty years ago. When the Court sentenced Morgan in this case, it was bound by the mandatory minimum sentences prescribed by law."
    - "Requiring him to be subjected to this severe risk for an extended period— given the length of time the coronavirus pandemic is likely to persist—does not, in the Court's view, amount to just punishment, nor does it promote respect for the law."

United States v. Foster, 2020 WL 5876941, at *1 (D. Or. Oct. 2, 2020)

- 36 months, started June 2019, has served 1 year
- FCI Dublin
- 36 years old, asthma, history of smoking and meth, recent upper respiratory infections
    - Used expert Dr. Chubbuck
    - Notes there is testing FCI Dublin has not provided, which is needed
    - Has symptoms of heart failure and FCI Dublin is failing to test her

United States v. Terraciano, 2020 WL 5878284, at *1 (E.D. Cal. Oct. 2, 2020)

- 40 months for bribery as DMV employee, projected release is December 2022, "has completed about 20 percent of her sentence of incarceration)
- Filed a few months after beginning sentence
- Hepatitis C, obese/overweight (in between), hypertension, history of smoking
- FCI Victorville. "she lives in a large cell with more than 90 other inmates and must also work outside that dormitory… She and her 90-plus cellmates share the same toilets and showers and line up together for food and medications; it is not possible to practice social distancing in these conditions"
- 3553 – Terraciano has also proposed a release plan that will allow the government to supervise and monitor her that will reduce the risk she again finds herself in the sort of dire financial straits that appear to have motivated her offense and that will reduce the risk of infection to her and to others.
    - Will live with sister and quarantine

United States v. Body, 2020 WL 2745972, at *2 (N.D. Ill. May 27, 2020)

- "Even though the Court already took Body's medical condition into account and gave him a significant break on his sentence, matters have changed significantly."
- "The Court can say, unequivocally, that the amount of time served to date by Body does not adequately account for the seriousness of his offense. He is essentially a lifelong, unrepentant drug dealer"
- Terre Haute
- Diabetes, tracheostomy, cancer, gout, severe arthritis, high cholesterol
- Sentenced to 42-month sentence, reported in January 2020, released after 4 months

United States v. Swanson, 2020 WL 5549142, at *1 (D. Idaho Sept. 16, 2020)

- Swanson is 63 years old. Swanson has COPD, thickening of the pleura (lung lining), obstructive sleep apnea, among other medical conditions
- 50 months in prison on 2019
- Self-reported in August 2019, FCI Sheridan

United States v. Fowler, 2020 WL 3034714, at *1 (N.D. Cal. June 6, 2020)

- granting release for defendant who had served 11 months of the 60 month sentence since her chronic asthma constituted an "extraordinary and compelling" reason

United States v. Liggins, 2020 WL 4904070, at *2 (D. Neb. Aug. 20, 2020)

- Defendant served nearly $8\frac{1}{2}$ years of a 131-month sentence
- Hypertension, obesity

United States v. Brannan, 2020 WL 1698392, at *1 (S.D. Tex. Apr. 2, 2020)

- Release of defendant who had only served 9 months of a 36-month sentence for fraud, based on "extraordinary and compelling circumstances."

United States v. Young, 2020 WL 2614745, at *2 (W.D. Wash. May 22, 2020)

- "Confronted with the apparently conflicting evidence, the Court credits Young's representation, which is based on direct knowledge rather than failure to confirm the existence of a filing from over a month ago," finds exhaustion met
- Despite best efforts, 70% tested positive at Lompoc
- 64 years old, hypertension and chronic kidney disease, African American
- Long battle with addiction
- 60-month heroin sentence, had only served 15 months
- Granted despite "the majority of the factors weigh against compassionate release"

United States v. Vazquez Torres, 2020 WL 4019038, at *1 (S.D. Fla. July 14, 2020)

- November 2021 projected release, FTC Oklahoma City
- Diabetes, hypertension, asthmatic symptoms, osteoarthritis
- Renewed motion
- Tested positive
- While there is no doubt that Defendant's conviction was serious, the Court recognizes that he had no prior criminal convictions, which suggests that Defendant does not pose a high risk of committing further crimes. Moreover, releasing Defendant to strict home confinement allows him to continue to repay his debt to society, imposes an adequate punishment, and promotes respect for the rule of law, while simultaneously allowing him to seek medical care and treatment by providers who are familiar with his medical issues and equipped to treat him
- Only served 5 months of 24 months

- "The fact that Defendant has served less than five months of his sentence is not dispositive, given Defendant's current health issues and the obstacles he faces in receiving adequate and complete treatment while incarcerated"

United States v. Delgado, 2020 WL 2464685, at *2 (D. Conn., April 30, 2020)

- Citing "majority of district courts" finding that courts can independently define "extraordinary and compelling reasons."
- Defendant only 29 months into 120-month sentence
- Obesity and sleep apnea, extensive discussion of obesity
- Released into home confinement

United States v. Echevarria, 2020 WL 2113604, at *3 (D. Conn., May 4, 2020)

- Defendant had asthma, 9 months into 48-month sentence
- Despite "substantial criminal record"
- "Strong pretrial adjustment" and "substantial rehabilitative efforts" prior to imposition of the sentence

United States v. Barber, 2020 WL 2404679, at *1 (D Ore. May 12, 2020)

- Drug offense, 60 months starting in August 2019
- Served 8.5 months, at Lompoc, projected release date is January 2024
- Regarding 1B1.13, courts are "not constrained by the BOP's determination," notes "a majority of federal district courts"
- Hypertension, obesity, diabetes
- Hospital Care Unit at Lompoc not a sufficient measure
- Government concedes "if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19 that condition may satisfy the standard of 'extraordinary and compelling reasons'"
- Was sentenced above the Guidelines due to mandatory minimum of 5 years
- Rejects 14-day request, orders immediate release and cites other courts that have immediately released inmates
- Has tested positive for COVID-19

United States v. Locke, 2020 WL 3101016, at *1 (W.D. Wash. June 11, 2020)

- Defendant at FDC Sea-Tac, severe obesity, chronic kidney disease, diabetes, severe obstructive sleep apnea, shortness of breath, and recurrent chest pain
    - Had been in diabetic coma at one point
- 62-month sentence, has only served 6 months, scheduled release is May 2024

United States v. Cornelio, 2020 WL 6021466, at *1 (D. Haw. Oct. 12, 2020)

- 32 months into his 135-month sentence
- Obesity, type 2 diabetes, diabetic polyneuropathy, high cholesterol, breathing problems, high risk of cardiovascular disease
- FCI Big Spring
- However, Defendant is correct that the prevalence of COVID-19 at his facility and the risk that it presents to him personally alters the punishment analysis

10

#### a.   Excessive Sentence

Mr. Garcia's life sentence, for a non-violent drug trafficking offense is excessive and if sentenced today would be lower.

Mr. Garcia understands the importance of finality in criminal proceedings. Even so, Mr. Garcia argues that justice has a role, too. The fact Mr. Garcia received life sentence, for a non-violent drug crime is "extraordinary" in itself. § 3582(c)(1)(A)(i). Mr. Garcia's life sentence is indeed more severe than would be applicable to him were he sentenced today with the First Step Act amendments in place.

Here, retroactivity for sentencing calculations generally are the Legislature's province. But Congress already demonstrated how factors that cannot be an "extraordinary and compelling reason" alone can still be considered with other factors. See § 994(t). And if this is so, it is hard to argue that the unfairness of keeping a man in prison for decades more than if he had committed the same crime today is anything other than compelling. This is especially so when Defendant almost certainly would have completed his term of imprisonment by now if sentenced under modern law. Mr. Garcia argues that he thus presents an "extraordinary and compelling reason []" for a sentence reduction under § 3582(c)(1)(A)(i).

#### b.   Rehabilitation

Mr. Garcia has served over 18 years incarcerated and submits that during all these years in prison constitutes another extraordinary and compelling reason for release. *Petitioner Garcia is no longer the same person whom this Court sentenced many years ago.*

Petitioner Garcia argues that his substantial rehabilitation during his over 18 years in prison constitutes another extraordinary and compelling reason for release. "Rehabilitation of the defendant alone shall not be considered" sufficiently extraordinary and compelling to justify compassionate release. § 994(t) (emphasis added). Yet a "statute should be construed so that effect is given to all its provisions." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)). This means that for the word "alone" to do any work—

as it must—the statute allows courts to consider rehabilitation as part of a compassionate release motion. Thus, several courts have found a defendant's rehabilitation to be part of the extraordinary and compelling reasons favoring release. E.g., Brown, 457 F. Supp. 3d at 701; United States v. Chan, No. 96-CR-00094-JSW-13, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020). Here, Mr. Garcia in his initial pleading provided ample evidence that he is no longer the same person whom this Court sentenced years ago. In all these years, Mr. Garcia has been such a model inmate, in fact, he was transferred to a lower custody facility located in Safford, AZ. Meanwhile, Mr. Garcia completed numerous programs, and has worked throughout his incarceration, and completed numerous education programs. ECF No. 522-1 at 7–8. Mr. Garcia's concerted efforts to grow as a person despite the hardships of incarceration weigh strongly in favor of compassionate release.

### B. Section 3553(a) Factors Under § 3582(c)(1)(A)

Mr. Garcia has demonstrated significant rehabilitation and can no longer benefit from "educational or vocational training, medical care, or other correctional treatment," provided by the BOP. See § 3553(a)(2)(D). Further, Mr. Garcia's criminal history demonstrates he is not a recidivism risk or a significant danger to the public. Id. at (a)(2)(B), (C). The honorable Court should not excuse Mr. Garcia's behavior but consider by "simply suggesting that [he is a] human being[]," with flaws, virtues, and a need for empathy. Richard S. Arnold, Remarks Before the Judicial Conference of the Eighth Circuit: The Art of Judging (Aug. 8, 2002). Mr. Garcia argues that the "need for the sentence imposed" also appears weaker given the extremely high risk to Mr. Garcia should he contract COVID-19. § 3553(a)(2). Although in normal times extended incarceration might be appropriate, normal times these are not. Given the risks to Mr. Garcia should he contract COVID-19, Mr. Garcia argues that his term of incarceration is sufficient to reflect the seriousness of the offense, afford adequate deterrence, and provided Mr. Garcia with educational and vocational training. See § 3553(a)(2)(A), (B), (D). Mr. Garcia avers that there is no need "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). However,

incarceration is not the only "kind[] of sentence available," and there are other ways to achieve the same public protection. § 3553(a)(3). Further, Mr. Garcia will most likely be deported upon release, which is itself a punishment. Padilla v. Kentucky, 559 U.S. 356, 364 ("[D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants . . . ." (footnote omitted)). Any lingering public safety concerns are mooted by the fact of Mr. Garcia's impending deportation.

C.   **Petitioner Garcia's Release Plan**

In his Motion for Sentence Reduction under 18 U.S.C. Section 3582(c)(1)(A) (Compassionate Release), Mr. Garcia has provided information outlining his release plan, any additional information is available upon request or with the appointment of counsel. However, Mr. Garcia will most likely be deported upon release, which is itself a punishment. Padilla v. Kentucky, 559 U.S. 356, 364 ("[D]eportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants . . . ." (footnote omitted)). Any lingering public safety concerns are mooted by the fact of Mr. Garcia's impending deportation.

## CONCLUSION

WHEREFORE, Petitioner Garcia respectfully prays this honorable Court Grant Petitioner Garcia Motion for Reconsideration of the Denial of his Motion for Compassionate Release and Appointment of Counsel.

Dated this May 6, 2022.

Sign Name: *[signature]*

Heriberto Garcia-Rodriguez
Reg. No. 07859-091
United States Penitentiary
USP LEE
P.O. Box 305
Jonesville, VA 24263

13

# CERTIFICATE OF SERVICE

I, Heriberto Garcia, hereby certify that I have served a true and correct copy of:

**MOTION FOR RECONSIDERATION: DENIAL OF PETITIONER GARCIA'S MOTION FOR COMPASSIONATE RELEASE AND REQUEST FOR APPOINTMENT OF COUNSEL**

[which is considered filed/served at the moment it was delivered to prison authorities for mailing as provided for in Houston v. Lack, 487 U.S. 266, 101 complete copy of the above-described materials in a sealed envelope affixed with the appropriate pre-paid first-class United States postage:

US District Court
District of Wyoming
111 S Wolcott St Ste 101
Casper, WY 82601

and deposited same with prison officials here at:

United States Penitentiary
USP LEE
P.O. Box 305
Jonesville, VA 24263

Pursuant to Title 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated and executed this 6th day of May 2022.

*/s/ Heriberto Garcia-Rodriguez*

Heriberto Garcia-Rodriguez
Reg. No. 07859-091
United States Penitentiary
USP LEE
P.O. Box 305
Jonesville, VA 24263

14